

# NUMBER 13-23-00591-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF C.N.L. AND C.T.F, CHILDREN

## ON APPEAL FROM THE 267TH DISTRICT COURT
## OF DEWITT COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Shannon appeals the termination of the parent-child relationship between her and her two children, Caleb and Chase, following allegations of neglect and abuse by appellee Texas Department of Family and Protective Services (the Department).[1] By what we construe as two issues, Shannon argues that "[t]he evidence

---

[1] We refer to the parties and children by aliases in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

was insufficient to support" (1) the statutory grounds for termination and (2) a finding that termination was in the children's best interest. We affirm.

## I.    BACKGROUND

The trial court ordered the removal of Caleb, who was almost three years old, and Chase, who was five days old, from Shannon following allegations that she and Chase tested positive for drugs at Chase's birth. At the statutory status hearing, the trial court adopted the family service plan for Shannon and each alleged father as orders of the court.[2] *See* TEX. FAM. CODE ANN. §§ 263.102, 263.202(b-1). Relevant here, Shannon's service plan required her to maintain contact with the Department, obtain and maintain safe and stable housing, complete parenting classes, complete a drug and alcohol assessment and follow the recommendations of the assessment, submit to random drug testing upon request, complete a batterer's intervention and prevention program (BIPP), and complete a psychological evaluation and follow the recommendations of the evaluation.[3] The case proceeded to a bench trial on October 26, 2023, where the following evidence was adduced.

Shannon testified that she used methamphetamine and marijuana while pregnant with Chase and confirmed that he tested positive for amphetamines at birth, leading to the children's removal. Department Investigator Aaron Holley explained that the Department attempted to have the children placed with their father but he was

---

[2] Each child had a separate alleged father. The trial court also ordered genetic testing for each father. The record demonstrates that paternity was established only as to Caleb. The parental rights of Caleb's father and Chase's alleged or unknown father were also terminated, but neither are a party to this appeal.

[3] At trial, it was revealed that Shannon's services were set up to occur via Zoom.

2

incarcerated at the time.[4] Shannon provided four other options for placement, including her brother. However, Shannon's brother could not take the children because he worked out of town two weeks at a time, and the other proposed placements could not be approved due to prior criminal or Department history stemming from drug use.

Tracie Itz testified that she is a "permanency specialist" with Belong, which served as the Department's initial community-based care provider for this case. According to Itz, Shannon initiated services but did not complete them. Angela Stuart replaced Itz as the permanency specialist and agreed that Shannon initiated but did not complete services. Stuart specified that Shannon completed the psychological and psychiatric evaluations, attended some parent-child visits, submitted to two drug tests at the outset of the case,[5] and initiated parenting classes and individual counseling. Stuart explained that Shannon disclosed methamphetamine use dating back to 2011 in her psychological assessment. Stuart further testified that the psychological evaluation revealed that Shannon was "at [a] high risk for relapse without treatment." Lastly, the psychological evaluation revealed a history of physical abuse against Shannon by her children's fathers.

According to Stuart, Shannon did not comply with the recommendations from the assessments nor complete the drug and alcohol assessment, BIPP, parenting classes, or individual counseling. Stuart explained that Shannon attended two parent-child visits but stopped attending despite the Department providing transportation. Lastly, Shannon ceased all contact with the Department for several months prior to trial, only reaching out

---

[4] It is unclear whether Holley was aware that Caleb and Chase possibly had different fathers.

[5] Both drug tests were negative.

to Stuart about two weeks before trial. After contact ceased, Stuart went by Shannon's home on several occasions, but nobody answered the door or called back when she left her business card.

Shannon agreed that she did not complete her services. Shannon was last employed six months prior to trial but explained that Perpetual Help Home, the shelter she moved into two weeks earlier, offers services to help residents find employment.[6] Shannon testified that she passed two drug tests to be able to stay at Perpetual Help Home. Shannon's two oldest children, who previously resided with her grandparents, moved into Perpetual Help Home with her. Shannon described Perpetual Help Home as a group home setting for women and children, with each parent and child set having their own private rooms with shared community spaces and bathrooms.

Shannon agreed that her drug use endangered Caleb and Chase but testified that she last used methamphetamine in December 2022 after the children were removed and approximately ten months before the trial commenced. Shannon acknowledged that she only submitted to two drug tests for the Department but explained that she did not have transportation to the drug testing sites the other times she was required to test. Shannon also agreed she had not visited her children in almost five months, explaining that she was not able to attend the visits at times but also did not want to attend because of "personal problems." Shannon stated she did not maintain contact with the Department for four months leading up to trial because of "personal problems" and lack of a phone or

---

[6] Shannon explained she previously stayed at Perpetual Help Home for five months in 2021 with her three oldest children but did not complete the program.

transportation. Shannon also acknowledged being arrested for possession of stolen goods two months before trial but explained that a friend had burglarized a home and left the stolen property in Shannon's home. Shannon said that she was unaware of the burglary or that the property was stolen.

Yuvonda Bell testified that she is the resident manager at Perpetual Help Home, where Shannon resided. Bell explained that the home helps residents "get whatever documents they need, provide them a safe place for them and their children, [and] connect them with any resource that is needed." Perpetual Help Home also provides anger management, parenting classes, and budgeting classes. Bell agreed that Shannon took and passed two drug screens with Perpetual Help Home but disclosed that the results were not lab verified.

Court Appointed Special Advocate Supervisor Darla Sanders testified that she is the supervisor assigned to Caleb and Chase's case. Sanders visited the children in their current foster-to-adopt placement, which she described as "a loving home," where the foster parents "are just amazing working with [the children.]" According to Sanders, the children are healthy, well-taken care of, and meeting all their milestones. Sanders believed the children would thrive if they continued in their current placement, which was a proposed adoptive home should the children become adoptable. Sanders recommended terminating the parent-child relationship between Shannon and the children because it was in their best interest.

The trial court terminated the parent-child relationship between Shannon and both children, citing endangerment, constructive abandonment, and failing to complete the

5

service plan, as grounds. *See id.* § 161.001(b)(1)(D), (E), (N), and (O). This appeal followed.

## II.    STANDARD OF REVIEW

"[I]nvoluntary termination of parental rights involves fundamental constitutional rights" and divests the parent and children of all legal rights, privileges, duties and powers normally existing between them, except for the children's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi—Edinburg 2010, no pet.); *see In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring) ("Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases."). Accordingly, "termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (first citing *Santosky v. Kramer*, 455 U.S. 960, 769 (1981); and then citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. A parent's rights to their children may be terminated upon a showing by clear and convincing evidence that (1) he or she engaged in certain acts or omissions prescribed by statute, and (2) termination is in the children's best interest. *Id.*

6

§ 161.001(b).

When reviewing the factual sufficiency of the evidence supporting termination, we ask "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In conducting this review, we consider whether the disputed evidence is such that a reasonable finder of fact could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Under the factual sufficiency standard, we defer to the trier of fact's determinations on the credibility of the witnesses "so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); *see also In re C.H.*, 89 S.W.3d at 26 ("A standard that focuses on whether a reasonable jury could form a firm conviction or belief retains the deference an appellate court must have for the factfinder's role.").

When reviewing the legal sufficiency of the evidence, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We must assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* Finally, we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been

7

incredible" while considering "undisputed facts that do not support the finding." *Id.* If we "determine[] that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then [we] must conclude that the evidence is legally insufficient." *Id.*

### III.  GROUNDS FOR TERMINATION

By her first issue, Shannon challenges the grounds for termination.

### A.  Applicable Law

While only one ground is necessary to support termination, when Subsections (D) and (E) (the "endangerment grounds") are found, we must review those grounds as a matter of due process. *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022); *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (providing a ground for termination if a parent has had the parent-child relationship to another child terminated under either Subsection (D) or (E)).

The "endangerment grounds" permit termination when a parent has "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]" or "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). The primary difference between Subsection (D) and Subsection (E) is that Subsection (D) focuses on the child's conditions or surroundings while Subsection (E) focuses on the parent's or another's conduct, whether by overt act or omission. *In re A.L.H.,* 624 S.W.3d 47, 55–56 (Tex. App.—El Paso 2021, no pet.). However, the same evidence may support a finding under either subsection, depending

8

on the circumstances. *Id.* (providing the example of continued domestic violence in the home with the children as grounds under both Subsection (D) and (E)). "[E]ndangerment encompasses 'more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment.'" *In re D.L.W.W.*, 617 S.W.3d 64, 78 (Tex. App.— Houston [1st Dist.] 2020, no pet.) (quoting *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *Boyd*, 727 S.W.2d at 533).

Under Subsection (D), "we must examine the time before the children's removal to determine whether the environment itself posed a danger to the [children's] physical or emotion well-being." *In re L.W.*, 609 S.W.3d 189, 199–200 (Tex. App.—Texarkana 2020, no pet.) (quoting *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.)). "A parent acts 'knowingly' when the parent is aware that the environment creates a potential danger to the child[ren] but the parent disregards that risk." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.).

Subsection (E) focuses on the parent's conduct rather than the children's conditions; it requires more than a single act or omission, but rather a "voluntary, deliberate, and conscious course of conduct by the parent." *In re A.L.H.*, 624 S.W.3d at 56 (citing *In re K.A.C.*, 594 S.W.3d 364, 372 (Tex. App.—El Paso 2019, no pet.)). Under Subsection (E), we may consider evidence of the parent's conduct before the children's birth and after the children's removal. *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re C.Y.*, No. 02-21-00261-CV, 2022 WL 500028, at *5–7 (Tex. App.—Fort Worth Feb. 18,

2022, pet. denied) (mem. op.) (considering parent's failure to complete drug treatment, failure to maintain stable housing and employment, failure to consistently attend visits, failure to emotionally and financially support the child, and periodic arrests as endangering to the child).

The children's physical or emotional well-being is endangered when the parent fails to remove them from a home in which abusive or violent conduct is occurring. *In re L.W.*, 609 S.W.3d at 200. Drug use may also create a dangerous environment for the children. *In re J.S.*, 675 S.W.3d at 128; *In re L.W.*, 609 S.W.3d at 200.

> [I]llegal drug use alone may not be sufficient to show endangerment, [but] a pattern of drug use accompanied by circumstances that indicate related dangers to the child[ren] can establish a substantial *risk* of harm. A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's "ability to parent."

*In re R.R.A.*, No. 22-0978, 2024 WL 1221674, at *7 (Tex. Mar. 22, 2024) (quoting *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009)).

## B.    Analysis

### 1.    Subsection (D)

Shannon challenges the sufficiency of the evidence supporting Subsection (D), arguing "the Department did not introduce evidence regarding the living conditions for the child[ren] while in [Shannon]'s care." Shannon also points to her testimony at trial that she was ten months sober, residing in a "very stable living situation and very safe environment for [the] children at Perpetual [Help] Home." However, Subsection (D) requires us to look at the children's environment *prior to* removal, thus, Shannon's testimony at trial, even if taken as true, does not overcome the evidence related to the children's environment

10

before removal. *See In re L.W.*, 609 S.W.3d at 199–200. The undisputed evidence shows that Shannon used methamphetamine and marijuana while pregnant with Chase. *See In re J.S.*, 675 S.W.3d at 128; *In re L.W.*, 609 S.W.3d at 200. Indeed, Shannon agreed that her drug use endangered her children. *See In re J.S.*, 675 S.W.3d at 128.

Although Shannon's argument does not differentiate between legal and factual sufficiency, we nonetheless conclude the evidence is both legally and factually sufficient to support termination under Subsection (D). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D); *In re J.F.C.*, 96 S.W.3d at 266–67.

### 2.      Subsection (E)

Next, Shannon argues the evidence is insufficient to support termination under Subsection (E) because the Department "failed to address [Shannon]'s conduct as a parent outside her admitted prior drug use and her missed parent-child meetings." Shannon also points to the lack of evidence related to Shannon's two oldest children that began residing with her the month of trial. Additionally, Shannon points to the lack of evidence that Shannon used drugs after the children's removal. Lastly, Shannon argues that the testimony that Chase was born drug-positive—including her own testimony—cannot support termination because it was not provided by a medical expert or via medical records.

We disagree that the Department did not present other evidence that would support the trial court's finding under Subsection (E). As noted, Shannon's prior drug use—dating back to 2011—was not merely drug use; she used drugs while pregnant. *See In re R.R.A.*, 2024 WL 1221674, at *7; *see also In re E.P.*, No. 10-22-00086-CV,

11

2022 WL 2977479, at *2 (Tex. App.—Waco July 27, 2022, no pet.) (holding that drug use while pregnant endangers the children and collecting cases). Further, Shannon's failure to take court-ordered drug tests for nine months leading up to trial permits a factfinder to infer that she continued her drug use. *See In re M.R.*, 243 S.W.3d 807, 818 (Tex. App.— Fort Worth 2007, no pet.). As to the absence of evidence relating to her two older children, the parent-child relationship between Shannon and those children was not terminated, and the Department was thus not required to present evidence relating to those children. Lastly, Shannon provides no authority that the Department needed to provide the medical records or expert testimony showing that Chase was born drug-positive and we find none; however, even if we were to discount her own testimony, Shannon admitted to methamphetamine and marijuana use while pregnant, which exposed Chase to danger. *See In re R.R.A.*, 2024 WL 1221674, at *7; *see also In re E.P.*, 2022 WL 2977479, at *2.

While Shannon again did not differentiate between legal and factual sufficiency, we nonetheless conclude the evidence was legally and factually sufficient to support termination under Subsection (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re J.F.C.*, 96 S.W.3d at 266–67. Shannon's first issue is overruled.[7]

## IV.  BEST INTEREST

### A.  Applicable Law

"The best-interest prong of the termination inquiry 'is child-centered and focuses

---

[7] Because we conclude the evidence is factually and legally sufficient to support termination under Subsections (D) and (E), we do not need to review the sufficiency of the evidence under Subsections (N) and (O). *See* TEX. R. APP. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) (noting only one ground is necessary to uphold termination).

12

on the child's well-being, safety, and development.'" *In re J.W.*, 645 S.W.3d at 746 (quoting *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018)). The Supreme Court of Texas has identified several nonexclusive factors for courts to consider in determining the child's best interest, known as the *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the children's desires; (2) the children's present and future emotional and physical needs; (3) the present and future emotional and physical danger to the children; (4) the parenting abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the children's best interest; (6) the plans for the children by those individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is an improper one; and (9) any excuse for the parent's acts or omissions. *Id.* at 371–72. Evidence that is probative of grounds for termination may also be probative of the best interest of the child. *In re C.H.*, 89 S.W.3d at 28. Not all factors must weigh in favor of termination, "particularly if the evidence w[as] undisputed that the parental relationship endangered the safety of the child." *Id.* at 27.

## B.     Analysis

The record contains no evidence regarding the children's desires, although at ages three and one, they were likely too young to express their wishes, and there is not a sufficient proxy by which we could gauge their desires. *See In re A.J.D.-J.*, 667 S.W.3d 813, 833 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[T]he general rule is that when a child is too young to express [them]self, [their] desires are neutral as to the trial court's

13

best-interest finding, unless there is circumstantial evidence from which the factfinder could infer [their] desires by proxy."). Similarly, there was no evidence regarding any special needs of the children beyond the natural needs of young children; thus, this factor does not support termination.

However, the evidence otherwise supports several factors weighing in favor of a finding that termination is in the children's best interest, such as Shannon's history of drug use, Shannon's failure to complete her service plan, Shannon's lack of cooperation with the Department, Shannon's failure to visit the children, Shannon's unstable living and employment situations throughout the case, and the children's current foster-to-adopt placement being described as a "loving home" with foster parents who "are just amazing [at] working with [the children]." *See Holley*, 544 S.W.2d at 371–72.

Although Shannon testified that she had not used drugs in ten months, the trial court was able to infer that she continued some drug use by her failure to drug test for ten months. *See id.*; *In re M.R.*, 243 S.W.3d at 818. Similarly, Shannon failed to attend visits with her children despite the Department transporting the children. *See Holley*, 544 S.W.2d at 371–72; *see also In re A.V.G.-P. & A.O.G.-P.*, No. 10-23-00294-CV, 2024 WL 1327908, at *4 (Tex. App.—Waco Mar. 28, 2024, no pet. h.) (mem. op.) ("[A] parent's failure to regularly visit his children after removal may support a finding that termination of the parent's rights is in the children's best interest."). Despite evidence that two weeks prior to trial Shannon voluntarily enrolled in Perpetual Help Home to seek assistance, she otherwise failed to engage and complete the services provided to her through the Department. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding that parent's

14

failure to complete court-ordered services can support a best-interest finding). Furthermore, the Department visited Shannon's home several times, and Shannon would not answer the door and did not communicate with the Department regarding these proceedings.

Ultimately, while some factors may weigh neutrally or even against termination, the evidence presented was both legally and factually sufficient to support finding that termination was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 266–67; *Holley*, 544 S.W.2d at 371–72. Shannon's second issue is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
25th day of April, 2024.